UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-23524-Civ-MORENO
        (09-20337-Cr-MORENO)
MAGISTRATE JUDGE P. A. WHITE

AMARILYS REMEDIOS,          :

        Movant,          :

v.                       :          REPORT OF
                                    MAGISTRATE JUDGE
UNITED STATES OF AMERICA     :

        Respondent.     :
_____

Introduction

This matter is before this Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking the constitutionality of her convictions and sentences for conspiracy to possess with intent to distribute 500 grams or more of cocaine, and attempt to possess with intent to distribute 500 grams or more of cocaine entered following a guilty plea in case no. 09-20337-Cr-Moreno.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules

Governing Section 2255 Cases in the United States District Courts.

The Court has reviewed the motion (Cv-DE#1), the government's response with multiple exhibits (Cv-DE#8), the Presentence Investigation Report (PSI), and all pertinent portions of the underlying criminal file.

The movant's form §2255 motion is a rambling document, difficult to decipher. However, as can best be extrapolated, and considering movant's arguments liberally as afforded *pro se* litigants pursuant to <u>Haines v. Kerner</u>, 404 U.S. 419 (1972), the movant appears to raise the following claims:

1.  She was denied effective assistance of counsel, where her lawyer was operating under an actual conflict of interest. (Cv-DE#1:5).

2.  She was denied effective assistance of counsel, where her lawyer failed to disclose or otherwise provide her with the government's evidence, and failed to depose witnesses, discover favorable evidence, establish a defense, and otherwise prepare for trial. (Cv-DE#1:5).

3.  Her attorney, the arresting officers, and

the prosecution were all aware that the government's main witness, Carlos Lleo, lied about his whereabouts and identity, and abducted movant's then 15-year old daughter. (Cv-DE#1:5).

4. Her plea of guilty was not knowing and voluntary. (Cv-DE#1:6).

## Procedural History

Briefly, the history of the underlying criminal case reveals that the movant was charged with and pleaded guilty, without a formal, written plea agreement, to conspiracy to possess with intent to distribute 500 grams or more of cocaine (Count 1), and attempting to possess with intent to distribute 500 grams or more of cocaine (Count 2).[1] (Cr-DE#16,63).

At the Rule 11 change of plea proceeding, the government proffered that on March 17th, 2009, Customs and Border Protection ("CBP") officers recovered a package sent from Guatemala, which was addressed to a Miami post office box, registered to the movant. (Cr-DE#63:10). The package contained a white, powdery substance which field tested positive for cocaine.

---

[1] Both movant and her coconspirator, George Bellmas, pled to the Indictment on July 20, 2009. (Cr-DE#63).

(<u>Id</u>.).  Although  movant  did  not  normally  receive
packages  at  her  post  office  box,  on  March  18th  and
again  on  March  20th,  2009,  she  inquired  at  the  store
whether  any  packages  addressed  to  her  had  been
received.  (<u>Id</u>.:10).  On  the  18th,  she  also  made  a
rental  payment  on  the  box,  which  included  two  months
of  overdue  rent,  and  advance  payment  for  a  few  months
rent.  (<u>Id</u>.).  On  March  24,  2009,  an  Immigration  and
Customs  Enforcement  ("ICE")  special  agent  delivered  a
note  signed  by  "Tony"  to  movant's  post  office  box,
indicating  he  had  her  "stuff,"  and  if  she  wanted  the
merchandise,  to  call  him  at  the  contact  number  listed.
(<u>Id</u>.).  Later,  movant  asked  the  store  clerk  a  series  of
questions  about  Tony.  (<u>Id</u>.).

Meanwhile,  on  April  2,  2009,  an  undercover  agent
received  a  call  from  someone  asking  to  speak  with
Tony.  (<u>Id</u>.).  The  caller  was  later  identified  as
codefendant,  George  Bellmas,  movant's  long-time  friend
and  ex-boyfriend.  (<u>Id</u>.:10-11).  After  several
additional  telephone  calls,  two  of  which  were
recorded,  Bellmas  agreed  to  meet  the  undercover  agent
at  El  Tropico  Restaurant  in  Doral  to  retrieve  the
package.  (<u>Id</u>.:11).  When  they  then  met  at  a  pre-
arranged  location,  Bellmas  agreed  to  pay  the

undercover $2,000 for the package. (<u>Id</u>.). Eventually, when the package was seized and Bellmas arrested, a laboratory analysis of the package revealed that it contained a detectable amount of cocaine, having a net weight of 1,001 grams. (<u>Id</u>.:12).

Regarding the movant's involvement, it was established that while Bellmas was meeting with the undercover agent, the movant remained in the driver's seat of a black Mercedes-Benz convertible, making eye contact with at least one of the surveilling agents. (<u>Id</u>.:11). The movant was further observed driving extremely slow through the parking lot, making counter-surveillance maneuvers, circling part of the parking lot. (<u>Id</u>.). When she attempted to leave the parking lot, she was arrested. (<u>Id</u>.). After being advised of and waiving her <u>Miranda</u>[2] rights, movant admitted she had been in contact with Bellmas while she was in the parking lot.[3] (<u>Id</u>.). Although movant claimed to have no money, and that Bellmas had agreed to buy her a $55 cell phone, she had with her at the time of her arrest $308.21. (<u>Id</u>.).

---

[2]<u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

[3]Phone records also confirmed that movant had been in frequent contact with Bellmas up to and after his meeting with the undercover agent. (<u>Id</u>.:11).

The government further proffered that it would have proven the movant intentionally agreed with codefendant George Bellmas and others to accomplish a common and unlawful plan, the object of which was to possess with intent to distribute 500 grams or more of cocaine, and that she intentionally attempted to possess the substance. (Id.:12). When asked if she agreed with the government's proffer of facts, the movant answered in the affirmative. (Id.:12).

At the Rule 11 hearing, the movant further acknowledged and agreed that she was giving up her constitutional rights, which included, but were not limited to, the right to confront witnesses, to a trial by jury, to call her own witnesses, to vote, and to carry a firearm. (Id.:13). The movant confirmed discussing her case, including possible defenses, and potential sentencing guidelines exposure with her attorney. (Id.:14). She also indicated she was satisfied with counsel's representation in this regard. (Id.:14). Further, the movant denied being threatened or forced to enter a guilty plea. (Id.). The court also advised movant that if it were determined that she in fact qualified for application of the safety valve provisions of the guidelines, then

it could impose a sentence without regard to the statutory minimum mandatory of five years. (<u>Id</u>.:16-18). Notwithstanding, the movant acknowledged that the court could impose a sentence of up to forty years as to each offense, a $2 million dollar fine, and lifetime supervised release. (<u>Id</u>.:20). The movant also acknowledged she could not withdraw her plea simply because she did not like the ultimate sentence imposed. (<u>Id</u>.). Ultimately, the court accepted the movant's guilty plea, finding it to be freely and voluntarily entered. (<u>Id</u>.:22).

Prior to sentencing, a PSI was prepared, which revealed as follows. Pursuant to U.S.S.G. §2D1.1(a)(3), the offense level, for an offense involving at least 500 grams, but less than 2 kilograms of cocaine, was set at 26. (PSI ¶28). Because the movant qualified for application of the safety valve provisions of the guidelines, two levels were reduced from the base offense level pursuant to U.S.S.G. §5C1.2(a). (PSI ¶30). An additional four-level reduction to the base offense level was given based on the movant's minor role in the offense and timely acceptance of responsibility, resulting in a total adjusted offense level 20. (PSI ¶¶32-37).

The probation officer further determined the movant had a total of one criminal history point, resulting in a criminal history category I. (PSI ¶41.). Based on a total offense level of 20 and a criminal history category I, the guideline imprisonment range was set at 37 to 46 months in prison.[4] (PSI ¶91). Statutorily, the movant was facing a minimum mandatory term of 5 years and up to 40 years in prison for violations of 21 U.S.C. §841(b)(1)(B). (PSI ¶90).

Prior to sentencing, the movant filed numerous objections to the PSI, in pertinent part objecting to the criminal history point assessed, the failure to award the third point for acceptance of responsibility, and seeking a mitigating role adjustment on the bases that her involvement in the offense constituted aberrant behavior and did not financially benefit her. (Cr-DE#48). At that time, the government objected to the movant's request for an additional one-level reduction to the base offense level for acceptance of responsibility because the movant changed her plea on the morning of trial.

---

[4]Apparently, the PSI initially set the criminal history category at II, but it was later reduced to a category I. (Cr-DE#64:10).

(<u>Id</u>.:7).

On September 18, 2009, the movant appeared for sentencing. (Cr-DE#64). At that time, the court considered the objections, granting some, overruling others, and after the movant provided allocution, wherein she requested additional leniency, including imposition of house arrest so that she could continue with her efforts to find her then missing daughter. (<u>Id</u>.:46-50). After considering the §3553 factors, and having given her a minor role reduction, the court noted that it did not believe that, given the nature and circumstances of the offenses, a sentence below 33 months in prison was warranted. (<u>Id</u>.:50). He then imposed a sentence of 33 months in prison, to be followed by four years supervised release. (<u>Id</u>.:50-51; Cr-DE#54). In so ruling, the court noted that it had departed downward more than 50%, from an initial 70-month term to 33 months in prison. (<u>Id</u>.:52). Apparently, the movant then asked for release pending the birth of her first grandchild, but after further argument in this regard, the court determined that she was a flight risk, based in part because she has a father in the Dominican Republic, and therefore, took

9

her into custody at that time.[5] (Id.51-55). The judgment was entered by the Clerk on September 21, 2009. (Cr-DE#54). No direct appeal was filed. (Cv-DE#1:2).

Thus, for purposes of the AEDPA's federal one-year limitations period, the judgment became final at the latest on October 5, 2009, fourteen days after the entry of judgment, when time expired for filing a notice of appeal.[6] At the latest, the movant was required to file this motion to vacate within one year from the time the judgment became final, or no later than October 5, 2010. See Griffith v. Kentucky, 479 U.S. 314, 321, n.6 (1986). This motion to vacate was timely filed by the movant on September 17, 2010.[7] (Cv-DE#1).

## Discussion of Claims

---

[5]The movant had been out on bond prior to sentencing.

[6]Where, as here, a defendant does not pursue a direct appeal, his conviction becomes final when the time for filing a direct appeal expires. Adams v. United States, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999). In 2009, the time for filing a direct appeal was increased from 10 to 14 days days after the judgment or order being appealed is entered. Fed.R.App.P. 4(b)(1)(A)(i). The judgment is "entered" when it is entered on the docket by the Clerk of Court. Fed.R.App.P. 4(b)(6). Moreover, now every day, including intermediate Saturdays, Sundays, and legal holidays are included in the computation. See Fed.R.App.P. 26(a)(1).

[7]See: Adams v. U.S., 173 F.3d 1339 (11 Cir. 1999) (prisoner's pleading is deemed filed when executed and delivered to prison authorities for mailing).

As will be demonstrated in more detail *infra*, the movant is not entitled to vacatur on any of the arguments presented. When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the petitioner due process of law. The petitioner therefore is not entitled to habeas corpus relief. <u>See</u> <u>Fuller v. Roe</u>, 182 F.3d 699, 704 (9 Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), <u>overruled on other grounds</u>, <u>Slack v. McDaniel</u>, 529 U.S. 473, 482 (2000). <u>See also</u> <u>United States v. Rivera</u>, 900 F.2d 1462, 1470 (10 Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the petitioner's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. <u>See</u> <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369-70 (1993).

Although some of the above claims could have been, but were not raised on direct appeal, construing the

movant's arguments liberally, she appears to argue that counsel was ineffective for failing to pursue the claims. A claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. United States v. Breckenridge, 93 F.3d 132 (4 Cir. 1996). Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in Strickland v. Washington, 466 U.S. 668 (1984); Murray v. Carrier, 477 U.S. 478, 488 (1986). Here, the movant cannot succeed on any of the claims presented because she cannot satisfy the Strickland test, so that those claims which could have been, but were not raised on direct appeal, are thereby barred from review in this collateral proceeding.

Regardless, in order to prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that her counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v.

12

Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000)(en banc). The standard is the same for claims of ineffective assistance on appeal. Matire v. Wainwright, 811 F.2d 1430, 1435 (11 Cir. 1987). A court may decline to reach the performance prong of the standard if it is convinced that the prejudice prong cannot be satisfied. Id. at 697; Waters v. Thomas, 46 F.3d 1506, 1510 (11 Cir. 1995).

To show prejudice following a guilty plea, a movant must establish that there is a reasonable probability that but for counsel's allegedly deficient conduct, she would not have pled guilty but would have gone to trial. Hill v. Lockhart, 474 U.S. 52 (1985). The court must determine whether "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 130 S.Ct. 1473, 1485 (2010)(citing Roe v. Flores-Ortega, 528 U.S. 470, 480, 486 (2000)). This determination is an objective one which is "dependent on the likely outcome of a trial had the defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007). No such showing has been made here.

Bare and conclusory allegations of ineffective assistance of counsel which contradict the existing record and are unsupported by affidavits or other indicia of reliability, are insufficient to require a hearing or further consideration.  See United States v. Robinson, 64 F.3d 403, 405 (8 Cir. 1995), Ferguson v. United States, 699 F.2d 1071 (11 Cir. 1983), United States v. Ammirato, 670 F.2d 552 (5 Cir. 1982); United States v. Sanderson, 595 F.2d 1021 (5 Cir. 1979).

In **claim one**, the movant asserts that she was denied effective assistance of counsel, where her lawyer was operating under an actual conflict of interest. (Cv-DE#1:5). She claims that a letter written by her attorney to codefendant Bellmas demonstrates this actual conflict, especially in light of the fact that allegedly many of movant's letter to counsel went unanswered. (Id.).

It should first be noted the movant does not provide any copies of the "numerous" letters she purportedly sent to counsel which she claims went unanswered. The January 5, 2009 letter from counsel to codefendant Bellmas, states as follows:

14

Please be advised that the undersigned received your letter and clarifications need to be made. First, hope you are doing well and adjusted. The undersigned took the representation of Mrs. Remedios in Federal Case and Civil Case, and assisted in your Federal Case at no charge, because I valued the friendship. In addition, you asked me to represent Mr. Bello in two federal cases and a state case, at no charge. We had a conversation, wherein it was understood I would stay with the bike as exchange for above. In addition, because I value the [sic] your friendship and Amy, I send you moneys to help you in your situation. Your bike has a small value in contrast to all legal work done for both of you at no charge. Again, it was done because I value the friendship. For your information, due to the bike being outside and not being used for a long period of time, it has had electrical and transmission problems. In electrical, my cost was nearly $600.00, the service of the transmission was $351.00, and it was required to be towed at a cost of $300.00. When we add both the repair costs and moneys sent to you, it's nearly $2,000.00. So you see, how much has been spent on it to make it functional. If you need money to buy necessity I send it to you as I value the friendship and be clear it is not payment for bike as no moneys is due.

(DE#1:Ex.A-1/5/09 Letter).

Review of the criminal docket in this case reveals

15

that the movant was represented by Eli Vazquez, from the time of her initial appearance through sentencing. The movant's codefendant, Bellmas, was represented by the Federal Public Defender from arraignment through sentencing. There is nothing of record to suggest that Vazquez also represented Bellmas. Even accepting petitioner's tacit suggestion that her codefendant paid her attorney's fees and costs, the court will assume that this is intended to allege that counsel operated under a conflict of interest.

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense which includes two correlative rights, "the right to be represented by counsel of choice" and "the right to a defense conducted by an attorney who is free from conflicts of interest." See United States v. Ross, 33 F.3d 1507, 1523 (11th Cir. 1994); see also, Wood v. Georgia, 450 U.S. 261, 271 (1981). However, it is well settled that joint representation does not, in itself, violate this guarantee. Holloway v. Arkansas, 435 U.S. 475 (1978); United States v. Benavidez, 664 F.2d 1255, 1258-59 (5th Cir. 1982).

16

A movant claiming that counsel labored under a conflict of interest in violation of the Sixth Amendment must demonstrate that: (1) his attorney had an actual, not speculative, conflict of interest, and (2) the conflict adversely affected counsel's performance. <u>United States v. Novaton</u>, 271 F.3d 968, 1010-1011 (11th Cir. 2001), <u>citing</u> <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 348 (1980); <u>accord</u>, <u>United States v. Ettinger</u>, 344 F.3d 1149, 1161 (11th Cir. 2003); <u>Pegg v. United States</u>, 253 F.3d 1274, 1277 (11th Cir. 2001). A defendant who fails to show both an actual conflict and an adverse affect is not entitled to relief. <u>United States v. Novaton</u>, 271 F.3d 968, 1010 (11th Cir. 2001); <u>Burden v. Zant</u>, 24 F.3d 1298, 1305 (11th Cir. 1994).

The Eleventh Circuit has adopted a test to distinguish actual from potential conflicts in the context of joint representation of codefendants. The movant must "point to specific instances in the record to suggest an actual conflict or impairment of their interests, make a factual showing of inconsistent interests, and demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence

helpful to one client but harmful to the other. If he did not make such a choice, the conflict remained hypothetical." <u>Barham v. United States</u>, 724 F.2d 1529, 1532 (11th Cir.), <u>cert. den'd</u>, 467 U.S. 1230 (1984); <u>see also, Porter v. Wainwright</u>, 805 F.2d 930, 939-40 (11th Cir. 1986); <u>see e.g.</u>, <u>Turnquest v. Wainwright</u>, 651 F.2d 331, 333 (5th Cir. 1981); <u>Freund v. Butterworth</u>, 165 F.3d 839, 859 (11th Cir. 1999), <u>quoting</u>, <u>Smith v. White</u>, 815 F.2d 1401, 1405 (11th Cir. 1987).

Once a defendant demonstrates that a conflict of interest actually affected his representation, he need not demonstrate prejudice to obtain relief. <u>Novaton</u>, <u>supra</u> at 1010. Rather, "[p]rejudice is presumed...if the defendant demonstrates that ... 'an actual conflict of interest adversely affected his lawyer's performance.'" <u>Strickland</u>, 466 U.S. at 692, <u>quoting</u>, <u>Cuyler</u>, 466 U.S. at 358; <u>Burden v. Zant</u>, 24 F.3d 1298 (11th Cir. 1994); <u>Porter v. Singletary</u>, 14 F.3d 554 (11th Cir. 1994). In this case, the movant needs to first establish the actual conflict. The movant provides no evidence to support his assertion that an actual conflict of interest existed.

Even if we were to assume that an actual conflict of interest existed between the movant and his attorney, the movant must show that his attorney's performance was "adversely affected" by the conflict. It is true that a movant need not show that the result of the proceeding would have been different without the conflict of interest, only that the conflict had some adverse effect on counsel's performance. <u>Strickland</u>, 466 U.S. at 694. To prove an adverse effect, a defendant must: 1) "point to some plausible alternative defense strategy or tactic" that might have been pursued, 2) "demonstrate that the alternative strategy or tactic was reasonable"[8] under the facts in his case, and 3) "show some link between the actual conflict and the decision to forgo the alternative strategy of defense."[9] <u>Novaton</u>, <u>supra</u> at 1011, <u>citing</u> <u>Freund v. Butterworth</u>, 165 F.3d 839, 860 (11 Cir. 1999) (en banc). In the absence of a showing of an "adverse effect," prejudice is not presumed to flow from a conflict of interest. <u>Id</u>. In this case, no

---

[8]Because prejudice is presumed under <u>Strickland</u>, 466 U.S. at 692, the movant "'need not show that the defense would necessarily have been successful if [the alternative strategy or tactic] had been used,' rather he only need prove that the alternative 'possessed sufficient substance to be a viable alternative.'" <u>Freund</u>, 165 F.2d at 960, <u>citing</u>, <u>United States v. Fahey</u>, 769 F.2d 829, 836 (1ˢᵗ Cir. 1985).

[9]In other words, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests. <u>Novaton</u>, <u>supra</u> at 1011, <u>citing</u>, <u>Freund</u>, 165 F.3d at 860.

actual conflict or adverse effect has been demonstrated.

No actual conflict of interest has been established, and the representation by Attorney Vazquez was effective and his choices were not shown to have been impacted by the fact that his fee may have been paid by codefendant Bellmas. Further, even if, as the letter suggests, movant's counsel assisted codefendant's counsel or the codefendant in his federal case, no showing has been made in this collateral proceeding that counsel was ineffective under <u>Strickland</u> or the <u>Cuyler</u> standard. Other than movant's self-serving, conclusory statement that she was denied the right to view all the evidence against her, such a claim is refuted by the change of plea transcript, as noted previously in this Report. At that time, movant acknowledged that she had gone over all discovery, the nature of the charges, and the guidelines with counsel, and was satisfied with counsel's representation and advice. Consequently, she is entitled to no relief on this claim.

Moreover, the record in this case reveals that the movant received vigorous and able representation, more

than adequate under the Sixth Amendment standard. In fact, as noted previously in this Report, based on counsel's vigorous challenges, the district court granted the movant a downward departure, which resulted in a sentence substantially lower than the mandatory minimum of five years. Therefore, counsel's performance was not ineffective. Under these circumstances, the movant has failed to establish prejudice stemming from counsel's alleged deficient performance, pursuant to <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and is therefore entitled to no relief on this claim.

In **claim two**, the movant asserts that she was denied effective assistance of counsel, where her lawyer failed to disclose or otherwise provide her with the government's evidence, and failed to depose witnesses, discover favorable evidence, establish a defense, and otherwise prepare for trial. (Cv-DE#1:5). This claim is clearly refuted by the record.

In this case, review of the record confirms that the movant's plea was knowing and voluntary, and therefore, the movant has waived any defense she may have had prior thereto to the charged conduct. To

ensure that a plea is voluntary and knowing, Fed.R.Cr.P. 11(b)(1) states that "the court must address the defendant personally in open court before accepting the plea and inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading." Gordon v. United States, 496 F.3d 1270, 1277 (11th Cir. 2007). The rule imposes upon a district court the obligation and responsibility to conduct a searching inquiry into the voluntariness of a defendant's guilty plea. Id. (citations omitted).

Thus, "[a] court accepting a guilty plea must comply with Rule 11 and specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (2005). In Moriarty, the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including:

22

the right to plead not guilty (or persist in
such a plea) and to be represented by
counsel; the possibility of forfeiture; the
court's authority to order restitution and
its obligation to apply the Guidelines; and
the Government's right, in a prosecution for
perjury, to use against the defendant any
statement that he gives under oath.

Id.

As previously narrated in this Report, the court
conducted a thorough Rule 11 proceeding. (Cr-DE#64).
At that time, the movant, a college educated
individual, acknowledged under oath[10] that she was
satisfied with counsel's representation, and that she
had discussed the indictment, the government's case,
and the nature of the charges and possible defenses
with counsel prior to the change of plea. The court
advised and the movant acknowledged her understanding
that the offenses carried a minimum of 5 and a maximum
of 40 years in prison. The movant also denied being
forced, threatened or coerced into changing her plea.
The movant further acknowledged that she would be

---

[10]The law is clear that "solemn declarations in open court carry a strong
presumption of verity," forming a "formidable barrier in any subsequent
collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); United
States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988). The subsequent presentation
of conclusory allegations, unsupported by specifics, is subject to summary
dismissal, as are contentions which in the face of the record are wholly
incredible. Machibroda v. United States, 368 U.S. 487 (1962).

unable to withdraw her plea should her ultimate
sentence be greater than any estimate she had been
previously provided. Finally, the movant confirmed
knowing that by entering into the plea she was waiving
her constitutional rights to a jury trial and to
confront and present witnesses.

On the record before this court, it is evident
that the movant understood the facts and the elements
of the offenses upon which the charges rested.
Moreover, by way of entering into the negotiated plea
agreement, the movant was telling her lawyer not to
conduct any further investigation and not present at
a pre-trial or trial proceeding any legal defenses
that she may be entitled to as it relates to her case.
Under these circumstances, no showing has been made
that the plea was anything but knowing and voluntary.

Thus, by entering in to a knowing and voluntary
plea, the movant waived all nonjurisdictional defects
and defenses. She is therefore barred from pursing
this claim. Thus, no showing has been made that
counsel was deficient or that the movant suffered
prejudice therefrom. See Strickland, supra.
Consequently, the movant's generalized allegations in

this collateral proceeding are clearly refuted by the record.

To the extent the movant claims generally that she was "denied the right to appeal," that claim is conclusory, and bereft of record support. On her form motion, in response to the question why she did not appeal her judgment of conviction, the movant states that counsel "informed" her that she did not have "a right to appeal." (Cv-DE#1:3). In claim two, the movant does not explain how she was denied this right, nor does she claim that she requested that counsel file a direct appeal. Further, movant has not filed a reply to the government's response herein, to rebut that such a request was, in fact, made.[11] Clearly, even if the court were to acknowledge that a brief, but inadequate consultation was had between the movant and counsel regarding her appellate rights, the undersigned finds that a reasonable defendant in movant's position would not have requested that a direct appeal be filed. To the contrary, given the

---

[11]The law is clear that any argument at this juncture that she did in fact request a direct appeal, which argument has not previously been made by the movant before the undersigned, cannot be raised for the first time in objections to this Report. See Starks v. United States, 2010 WL 4192875 at *3 (S.D. Fla. 2010); United States v. Cadieux, 324 F.Supp. 2d 168 (D.Me. 2004). "Parties must take before the magistrate, 'not only their best shot but all of the shots.'" Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987)(quoting Singh v. Superintending Sch. Comm., 593 F.Supp. 1315, 1318 (D.Me. 1984)).

sentence imposed, the court finds any suggestion to the contrary highly incredible.

In Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000), the Supreme Court addresses the issue of whether "counsel is ineffective for not filing a notice of appeal when the defendant has not clearly conveyed his wishes one way or the other," and holds that the appropriate standard of review in such cases is an analysis under Strickland v. Washington, 466 U.S. 668 (1984), which requires that a movant establish that (1) her counsel's representation fell below an objective standard of reasonableness, and (2) but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different.

When considering a claim of ineffective assistance of counsel for failing to file a notice of appeal, courts should determine whether counsel actually consulted with the defendant about the advantages and disadvantages of prosecuting an appeal; and, if not, whether counsel's failure to consult constitutes deficient performance. Roe v. Flores-Ortega, supra.

26

Counsel's performance is deemed deficient when "there is reason to think either (1) that a rational defendant would want to appeal (for example when there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480.  The Court notes that a "highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea," but cautions that all relevant factors must be examined.  Id.

Once deficient performance is established, the Strickland analysis requires a showing that the defendant was prejudiced as a result. Id. at 484. To establish prejudice, the defendant must demonstrate "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. No such showing has been made here.

Noting that evidence that there were nonfrivolous grounds for appeal or evidence that the defendant expressed a desire to appeal will often be highly relevant, the Court stated that such evidence alone is insufficient to establish prejudice.  Id. at 485-486.

The inability to specify the points which would have been raised on appeal or to demonstrate meritorious grounds for appeal will not foreclose the possibility that a movant can satisfy the prejudice requirement where there are other substantial reasons to believe that the defendant would have appealed.  Id. at 486.


However, in this case, the movant does not claim that she requested counsel to file an appeal, but appears to state generally that he advised her that no appeal could be filed. Regardless, there is nothing of record in this proceeding or the underlying criminal case to suggest that a rational defendant, like the movant here, would have wanted to pursue an appeal or that there were non-frivolous grounds for an appeal, especially in light of the fact the movant received a sentence far below the statutory minimum mandatory and even below that of the initial properly calculated guideline range. Under these circumstances, there is little likelihood that she would have been successful had she raised any of the complaints here on direct appeal. Consequently, since no showing has been made that she in fact requested that a direct appeal be filed, the court finds that a defendant in her

position would not have pursued an appeal. Thus, this claim also fails for failing to establish either deficient performance or prejudice under <u>Strickland</u>.

In **claim three**, the movant asserts that she her attorney, the arresting officers, and the prosecution were all aware that the government's main witness, Carlos Lleo, lied about his whereabouts and identity, and abducted movant's then 15-year old daughter. (Cv-DE#1:5).

The movant does not suggest how Lleo was involved in her federal case. If she means to argue counsel should have argued that Lleo was a potential government witness who had abducted her daughter, that claim must also fail. There is nothing of record to support such an allegation. Regardless, even if counsel had pursued the issue prior to sentencing, no showing has been made that this would have altered the outcome of the proceedings. To the contrary, the issue of movant's missing daughter was fully explored by counsel and the movant at sentencing. While sympathetic with her plight, the court nevertheless refused to depart any further in determining the sentence to be imposed. Under these circumstances, no

prejudice has been established arising from counsel's failure to pursue this issue.

If, on the other hand, the movant claims that the government failed to disclose this information, in violation of Brady,[12] that claim was waived by the knowing and voluntary plea. A defendant entering a guilty plea cannot rely on Brady materials in seeking postconviction relief, because her right to a fair trial is not implicated. See Orman v. Cain, 228 F.3d 616, 617 (5th Cir. 2000).("Brady requires a prosecutor to disclose exculpatory evidence for purposes of ensuring a fair trial, a concern that is absent when a defendant waives trial and pleads guilty.); see also Matthew v. Johnson, 201 F.3d 353, 361-62 (5th Cir. 2000) ("Because a Brady violation is defined in terms of the potential effects of undisclosed information on a judge's or jury's assessment of guilt, it follows that the failure of a prosecutor to disclose exculpatory information to an individual waiving his right to trial is not a constitutional violation.") (internal quotation omitted); see also United States v. Ruiz, 536 U.S. 622, 634 (2002) (Thomas, J., concurring) ("The principle supporting Brady was

---

[12] Brady v. Maryland, 373 U.S. 83 (1963).

avoidance of an unfair trial to the accused. That concern is not implicated at the plea stage regardless.") (internal quotation omitted). Accordingly, a prosecutor's failure to disclose potentially exculpatory material to a criminal defendant prior to entry of a guilty plea does not constitute a violation of <u>Brady</u> or the Due Process Clause. Further, movant has not indicated how the information regarding Lleo was exculpatory or material to the determination of her guilt. <u>Brady</u>, 373 U.S. at 87. For the foregoing reasons, the movant cannot prevail on this claim.

In **claim four**, the movant asserts that her plea of guilty was not knowing and voluntary. (Cv-DE#1:6). According to the movant, her plea was unlawfully induced because her attorney did not investigate her daughter's disappearance, and did not want her to report the occurrence to the authorities. (<u>Id</u>.). Movant attaches a police report which confirms that at the time Carlos Lleo was apprehended by police, he told them where they could find the movant's minor daughter. (<u>Id</u>.). In fact, movant's minor daughter was located and then taken into custody based on two open warrants. (<u>Id</u>.). This is a mere reiteration of

arguments raised in relation to claim three above and should be denied for the reasons expressed therein. Regardless, as previously discussed in this Report, the movant's plea was knowing and voluntary. Thus, any challenge on the basis proffered here was waived by the entry of her voluntary plea. Consequently, the movant's allegations fails.

Finally, the movant's request for an evidentiary hearing on his claims of ineffective assistance of counsel should be denied. A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations or affirmatively contradicted by the record. See Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989), citing, Guerra v. United States, 588 F.2d 519, 520-21 (5th Cir. 1979). As previously discussed in this Report, the claims raised are unsupported by the record or without merit. Thus, no evidentiary hearing is required.

## Conclusion

It is therefore recommended that this motion to vacate sentence be denied, and the case closed.

Objections to this report may be filed with the Chief Judge within fourteen days of receipt of a copy of the report.

Signed this 28th day of March, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Amarilys Remedios, Pro Se
    Reg. No. 81978-004
    F.C.C.-Coleman Camp (Med.)
    P.O. Box 1027
    Coleman, FL 33521

    Rinku Tribuiani, AUSA
    U.S. Attorney's Office
    500 Australian Avenue, Suite 400
    West Palm Beach, FL 33401